**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CONNIE S. WOJTYCA,

                Plaintiff,             CASE NO. 06-CV-12401

-vs-                                   PAUL D. BORMAN
                                   UNITED STATES DISTRICT JUDGE
JO ANNE BARNHART, Commissioner
of Social Security,                         DONALD A. SCHEER
                                   UNITED STATES MAGISTRATE JUDGE
                Defendant.
_____/

**OPINION AND ORDER**
**(1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION;**
**(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**
**AND (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are Plaintiff's February 16, 2007 Objections (Docket No. 13) to the Magistrate Judge's January 30, 2007 Report and Recommendation (Docket No. 12). The Magistrate Judge recommended that Defendant's Motion for Summary Judgment be granted and that Plaintiff's Motion for Summary Judgment be denied. Defendant filed a Response to Plaintiff's Objections on March 12, 2007. (Docket No. 16).

Having considered the entire record, and for the reasons that follow, the Court ADOPTS the Magistrate Judge's Report and Recommendation, DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendant's Motion for Summary Judgment.

**I.    BACKGROUND**

Plaintiff Connie S. Wojtyca ("Plaintiff") filed an application for Disability Insurance Benefits on December 13, 1999, claiming that she had been unable to work since May 26, 1998, due to depression, agoraphobia, anxiety, and migraine headaches. (Tr. 17, 60-69). Plaintiff was

1

forty-five years old when she filed the application. Plaintiff's application was denied by Defendant. Plaintiff requested a hearing; and the Administrative Law Judge ("ALJ") denied her claim on May 18, 2001. (Tr. 17, 252-64). Plaintiff requested a review of the hearing decision by the Appeals Council. On June 14, 2002, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings in front of another ALJ. (Tr. 17, 282-85).

Before the new hearing date, the new ALJ ordered a complete psychological evaluation of Plaintiff with a mental status examination and a Medical Source Statement ("MSS"), since the ALJ found a lack of medical evidence since 2001 as to Plaintiff's mental condition. (Tr. 17). Terry L. Rudolph, Ph.D., performed the evaluation on May 22, 2004. (Tr. 27, 348-52). Upon review of Plaintiff's medical records and an interview, Dr. Rudolph concluded that Plaintiff had no significant work-related mental/emotional limitations. (Tr. 23, 352).

On March 29, 2005, the ALJ held a hearing, at which Plaintiff and her husband appeared and testified. (Tr. 17). Plaintiff was represented by counsel at the hearing. (*Id.*).

On August 24, 2005, the ALJ issued a written opinion denying Plaintiff's application for Disability Insurance Benefits. (Tr. 17-29).

Plaintiff requested a review of the ALJ's decision by the Appeals Council. The Appeals Council denied her request on March 28, 2006. (Tr. 8-13).

Plaintiff filed the instant suit on May 26, 2006. Plaintiff filed a Motion for Summary Judgment on October 27, 2006. Defendant filed her Motion for Summary Judgment on November 16, 2006. The Magistrate Judge issued a Report and Recommendation on January 30, 2007.

## II.     ANALYSIS

A.    **Standard of Review**

Pursuant to Fed. R. Civ. P. 72(b), the Court conducts a *de novo* review of any of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed timely objections. *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004).

The Court reviews the Commissioner's decision to deny social security benefits under a "substantial evidence" standard:

> Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive so long as they are supported by substantial evidence. [A court's] review is limited to determining whether there is substantial evidence in the record to support its findings. Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Further, [the court] must defer to an agency's decision even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ. [The court's] role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony.

*Wright v. Massanari*, 321 F.3d 611, 614-15 (6th Cir. 2003) (internal citations and quotation marks omitted).

B.    **Plaintiff's Objections**

Plaintiff objects that the Magistrate Judge:

(1)    failed to recognized the medical evidence that "every treating doctor [Plaintiff] has had, has said that she is disabled";

(2)    relied improperly on a state agency doctor's opinion who only saw Plaintiff one time and did not accord greater weight to Plaintiff's treating physicians;

(3)    failed to recognize Plaintiff's physical limitations; and

(4)    ignored certain opinions offered by the vocational expert; and

(5)    committed "legal error."

> 1.    Objections 1-2: Medical Evidence

Plaintiff objects that the Magistrate Judge ignored substantial medical evidence that pointed to the fact that Plaintiff was disabled and could not return to work. In support, Plaintiff quotes the opinions of Dr. Thomas Graves, Dr. Allen Thornburn, Dr. Gordon Forrer, Dr. Rawnak Hassan, Dr. Norman T. Samet, and Dr. Samuel I. Goldstein. (Tr. 328, 332, 335, 338, 340, 344).

Plaintiff also references a April 18, 2006 opinion by Dr. Graves stating that Plaintiff could not return to work full-time, due to depression, panic disorder, anxiety disorder, frequent migraine headaches, carpal tunnel syndrome, and bronchial asthma. (Pl. Obj. 3). This statement by Dr. Graves was not part of the administrative record before the ALJ or the Appeals Council, nor has a copy of this letter or report been provided to the Magistrate Judge or to this Court. Therefore, the Court does not consider this unsubstantiated evidence.

Plaintiff also objects that the Magistrate Judge disregarded Plaintiff's treating physicians, and, instead, relied upon Dr. Rudolph's opinion, who only saw her on one occasion.

Plaintiff claims that the Magistrate Judge did not take into account the statement from Dr. Graves' September 8, 2000 letter to Plaintiff's attorney that "I do not feel the patient is capable of performing substantial gainful employment on regularly sustained basis . . . . with her depression and anxiety[,] full-time employment will most likely prove impossible for this patient to endure." (Tr. 339-40).

In evaluating the medical evidence in the record from Dr. Graves, the Magistrate Judge made the following observations:

> When evaluating Plaintiff's residual mental functional capacity, the Law Judge noted that the claimant did not seek significant treatment for anxiety or other emotional difficulties after September 2000, and that she was never hospitalized for this impairment (TR 25). Moreover, the ALJ cited specific notes from Dr. Thomas Graves, claimant's family physician, showing that Plaintiff's depression was controlled by medication, and that treatment for the condition had proved helpful (TR 25, 206). The treating doctor stated on

>a number of occasions that Plaintiff was doing "quite well" (TR 156, 172, 174). In a report dated March 1999, Dr. Graves stated that the claimant no longer felt depressed and had stopped taking medication (TR 172). Two weeks later, Dr. Graves reported that Plaintiff felt wonderful (TR 165). Progress notes from October and November 1999, do not even discuss claimant's mental impairments (TR 153-154). In a letter dated September 2000, Dr. Graves indicated that Plaintiff had experienced "tremendous improvement in her overall health and outlook in life" after her employment had granted her a medical disability (TR 340).
>
>Dr. Graves['] treatment notes fail to demonstrate that Plaintiff's depression created significant limitations or was not controlled by medication. The lack of significant treatment for emotional difficulties since 2001 further belies her claim of totally debilitating symptoms. The ALJ also considered Plaintiff's own description of her daily activities in discrediting her claims of total disability (TR 24). The claimant told an examining doctor in May 2004, that she was the primary care giver for her father, a stroke victim. Plaintiff reportedly got him out of bed every morning, cleaned and dressed him, prepared all his meals and cleaned the house on a regular basis (TR 349).

(R&R 5-6) (footnote omitted).

The ALJ noted that Dr. Graves' September 8, 2000 letter to Plaintiff's attorney was "inconsistent with his own treatment notes, and [was] therefore accorded little weight." (Tr. 25).

The Court observes that Plaintiff has not attempted to rebut the analysis of the ALJ or the Magistrate Judge on the issue of Dr. Graves' conclusory statements in the letter and their inconsistency with his treatment notes. *See* 20 C.F.R. § 404.1527(e)(1) (stating the ALJ is not required to accept a physician's conclusory opinion on the ultimate issue of disability); *Maple v. Apfel*, 14 Fed. Appx. 525, 536 (6th Cir. July 12, 2001) (unpublished). The ALJ is not required to accept the opinions of a treating physician when that opinion is contradicted by objective medical evidence. *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

Plaintiff next offers statements in a November 2, 1999 "To Whom It May Concern" letter from Dr. Thorburn, a psychiatrist, that "it is my opinion that [Plaintiff] is not able to return to

work. (Tr. 328). The Magistrate Judge found that "substantial evidence also supported the ALJ's decision to reject the disability opinion from Dr. Alan Thorburn. Before opining on a Ford Motor Company form that Plaintiff has been disabled since August 1998 (TR 322), Dr. Thorburn had encouraged Plaintiff to return to work in August 1999 (TR 216)." (R&R 6). The Court also notes that according to Dr. Thorburn's treatment notes that from August 1998 until December 1999, Plaintiff responded positively to the medication regimen. (Tr. 172, 211-17, 232-33, 236, 239-40). Dr. Thorburn only detected an increase in Plaintiff's anxiety when she considered returning to work. (Tr. 211, 213). Since the statements in Dr. Thoburn's November 1999 letter were inconsistent with his treatment notes before and after that date, the Court finds that the ALJ did not err in affording the letter little weight.

Plaintiff next offers the May 13, 1999 opinions of Dr. Gordon Forrer. Dr. Forrer performed a one-time psychiatric examination of Plaintiff, and did not prescribe treatment or medication. (Tr. 329-32). Dr. Forrer diagnosed Plaintiff with "panic disorder with agoraphobia" and "personality disorder with dependency and emotional lability." (Tr. 332). The ALJ found that "Dr. Forrer's opinion that [Plaintiff] was disabled as of May 13, 1999, the date of his independent psychiatric examination, appears to be based largely on his observation that [Plaintiff] 'had a great deal of difficulty concentrating,' and is therefore accorded light weight, as it is out of proportion with the remaining objective medical evidence." (Tr. 25).

Similarly, Dr. Hassan performed a one-time psychiatric examination of Plaintiff on June 30, 1999. (Tr. 332-35). Dr. Hassan diagnosed Plaintiff with "generalized anxiety disorder rule out dysthmic disorder. To rule out social phobia." (Tr. 334). Dr. Hassan further noted, however, that Plaintiff appeared to be benefitting from her medications and psychiatric contact. He

recommended a "temporary disability" for six months. (Tr. 335). The ALJ noted that Dr. Hassan's opinion was that Plaintiff could not return to her previous job as a material handler because "the job requires 'concentration and constant attention' [and was] consistent with the other objective medical evidence and with [his] finding that Plaintiff is limited to performing unskilled work . . . ." (Tr. 25).

Plaintiff next offers a December 1, 1999 psychiatric examination from Dr. Norman Samet. (Tr. 336-38). Dr. Samet diagnosed Plaintiff with "major depression recurrent," apparently based upon Plaintiff being "fearful, agitated, and in tears" at the examination. (Tr. 337). The ALJ gave this evidence little weight since it was inconsistent with the objective medical evidence. (Tr. 25).

Finally, Plaintiff points to a February 24, 2001 letter addressed to her attorney from Dr. Samuel Goldstein. (Tr. 341-44). The ALJ recognized that Dr. Goldstein is not a medical doctor and that the purpose of his vocational rehabilitation evaluation was to assess her problems with her right shoulder. (Tr. 384). Defendant correctly asserts that the opinions of a vocational rehabilitation consultant are the type of the evidence that an ALJ may consider, but is not required to do so. *See* 20 C.F.R. § 404.1513(d). The Court finds that it was reasonable for the ALJ to disregard Dr. Goldstein's opinions on Plaintiff's mental conditions since he was not a trained mental health professional, and since his diagnosis simply repeated the information that Plaintiff supplied to him about her mental condition.

The Court recognizes that Dr. Forrer, Dr. Hassan, and Dr. Samet only examined Plaintiff on one occasion in 1999. They did not prescribe any course of treatment, and their opinions were inconsistent with the objective medical evidence based upon the long-term clinical findings of

7

Dr. Graves, Dr. Thoburn, Dr. Barrett, and the more-recent 2004 diagnosis of Dr. Rudolph. Accordingly, the ALJ reasonably gave greater weight to the latter opinions. *See* 20 C.F.R. § 404.1527(d)(2) (stating that the Commissioner considers the length, nature, and extent of a treatment relationship in determining the amount of weight to give to medical evidence).

### 2. Physical Limitations

Plaintiff objects that the Magistrate Judge did not consider her "physical conditions" to limit her ability to work. Plaintiff argues that the record reflects that she suffers from "frequent migraine headaches, COPD, asthma, and carpal tunnel syndrome.

The Court finds that Plaintiff did not raise the issue of physical limitations in her Complaint or in her Motion for Summary Judgment. Moreover, the ALJ clarified with Plaintiff's attorney at the March 29, 2005 hearing that Plaintiff's "primary reason" for her incapability of working was because of her "emotional condition," and not any physical limitation. (Tr. 384-85). Accordingly, since Plaintiff failed to present this contention to the Magistrate Judge, she waives this issue on review. *Murr v. United States*, 200 F.3d 895, 902 n. 1 (6th Cir. 2000) (holding that the Magistrate Judge Act does not permit parties to raise new issues or issues on objection that were not presented to the magistrate judge).

### 3. Vocational Expert

Finally, Plaintiff objects that the Magistrate Judge disregarded the testimony of the Vocational Expert ("VE") when the VE stated at the March 29, 2005 hearing that Plaintiff would never be able to perform any employment on a sustained basis. (Tr. 405).

The following is the relevant exchange among Plaintiff's attorney, the ALJ, and the VE:

ATTY: – Ms. Schabocker, you have had an opportunity to listen to the claimant's testimony regarding the severity and extent of her emotional problems and

|       |          |
|-------|----------|
| | the frequency and the duration of her panic attacks, is that correct? |
| VE: | Correct. |
| ATTY: | If the testimony were found to be credible, would a hypothetical individual, considering the claimant's age, education and past work experience with those same limitations be capable of performing any work activity at any level of exertion in competitive employment on a sustained basis? |
| VE: | No, she would not be able to. |
| ALJ: | Counsel, I'm, I'm not trying to usurp what you want to ask our vocational expert. I just wanted to make sure that considering our claimant's subjective complaints, if they were found to be credible based on her testimony, she would have had to remove herself from extended periods of time for unexcused absence rom the workplace. And consequently, there would be no jobs in competitive employment that would tolerate that. However, if, if you wish to add or, or have any further clarification on your question, you may, sir. |
| ATTY: | No sir, Your Honor, I appreciate the clarification. |
| ALJ: | Yeah, I just wanted to make sure that, you know, that we were dealing with all of the – I wanted Ms. Schabocker to take into consideration all of the subjective complaints that we had, and I thought that they would be preclusive of competitive employment. |
| ATTY: | I appreciate it. |

(Tr. 405-06).

However, the ALJ did not find Plaintiff's testimony entirely credible:

I have considered the claimant's subjective complaints and have found them not credible in light of their inconsistency with the objective medical evidence from her treating physician, Dr. Graves, from 1998 to 1999. Dr. Graves' treatment notes indicate that on May 26, 1998, the claimant's depression was well-controlled with medication. On December 30, 1998, the claimant reported that she was "[f]eeling quite well," and on March 31, 1999, she reported that she "[f]eels wonderful." Furthermore, on September 22, 1999, Dr. Graves notes that the claimant reported that her "[d]epression is doing quite well. In fact, she feels quite relieved because she has been medically retired from her employment."

9

> Further, the claimant reportedly went back to work in July 1998, which is contrary to her hearing testimony that she did not go back to work after May 26, 1998, the alleged onset date of disability. Moreover, the claimant's credibility is further eroded by the lack of any objective medical evidence that the claimant has either sought or received any significant ongoing medical treatment for her mental condition since 2001.

(Tr. 25) (internal citations omitted).

Plaintiff does not argue that the ALJ's credibility determination was unreasonable or not supported by substantial evidence in this instance. Additionally, this Court must accord deference to the credibility determinations made by the ALJ. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). Further, apart from the ALJ's evaluation of the credibility of Plaintiff's testimony at the March 29, 2005 hearing, the Court finds that there was substantial evidence in the record to conclude that Plaintiff's subjective complaints did not comport with her treating physician's notes and the absence of the seeking of medical treatment for her mental conditions. The ALJ acknowledged Plaintiff's mental condition limitations, based on the medical record, and concluded that Plaintiff had sufficient residual capacity to perform work in the Michigan and national economies. (Tr. 28-29). The Court holds that the ALJ's findings on these issues are supported by substantial evidence.

        4.      Objection 5: "Legal Error"

Plaintiff finally claims that the Magistrate Judge did not address the issue of "legal error." Plaintiff argued in her Brief that the ALJ's credibility determinations did not conform to Social Security Rulings. In SSR 96-7P, 1996 WL 374186, the Ruling stated that "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

statements and the reasons for that weight." *Id*. at *2. Plaintiff maintains that the ALJ did not provide reasons for discounting the credibility of Plaintiff's subjective complaints.

As quoted above in the previous section, the ALJ did not simply make a conclusory, unsupported credibility finding. The ALJ had the chance to observe Plaintiff's testimony at the hearing, and reasoned that her testimony was inconsistent with the previous objective medical evidence from her treating Dr. Graves, Dr. Rudolph's recent evaluation, and the fact that there was no evidence that Plaintiff sought treatment for mental conditions after 2001. Hence, the Court finds that the ALJ did provide a reasoned explanation for discounting the credibility of Plaintiff's subjective complaints.

### III.     CONCLUSION

For the foregoing reasons, the Court hereby:

(1)     **ADOPTS** the Magistrate Judge's Report and Recommendation;

(2)     **DENIES** Plaintiff's Motion for Summary Judgment (Docket No. 9); and

(3)     **GRANTS** Defendant's Motion for Summary Judgment (Docket No. 10).

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 5, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on

April 5, 2007.

           s/Denise Goodine
           Case Manager